J-S09031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.K.F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.S. FATHER | No. 1533 MDA 2015 |

Appeal from the Decree entered August 12, 2015,
in the Court of Common Pleas of Dauphin County, Orphan's
Court, at No: 2-AD-2015

BEFORE:  PANELLA, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED MAY 13, 2016**

A.S. ("Father") appeals from the order dated and entered on August 12, 2015, granting the petition filed by J.A.B. ("Foster Mother") and her husband, R.H.B. ("Foster Father") to involuntarily terminate Father's parental rights to the minor, male child, C.K.F. (born in August of 2014), "Child"), pursuant to section 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S. § 2511(a)(1) and (b).[1]  We affirm.

The trial court has set forth the relevant history of this case in its Opinion.  ***See*** Trial Court Opinion, 10/1/15, at 1.  We adopt the trial court's recitation for purposes of this appeal.  ***See id***.  On March 19, 2015, Foster Mother and Foster Father filed a petition to terminate the parental rights of

---

[1] On December 30, 2014, D.F. ("Mother") filed a consent to adopt and adoption placement agreement.  On June 25, 2015, Mother filed a petition to revoke consent.  On August 19, 2015, following a hearing, the trial court found that Mother failed to revoke her consent, and Mother voluntarily relinquished her parental rights to Child.  Mother is not a party to this appeal, nor did she file a separate appeal.

Father to Child. On August 5, 2015, the trial court held a hearing on the petition. At the hearing, Father was present pursuant to the trial court's order directing the warden of Cumberland County Prison to produce Father at the time of the hearing. Father testified on his own behalf. Warren Smith, pediatric social worker at Penn State Hersey Medical Center; Heather Reybok, a paralegal at Smoker Gard Associates; Louis Martin, a Bible club leader and friend of Mother; and Glenda Sensenig, a friend of Mother from church; Foster Mother; and Mother also testified at the hearing. On August 11, 2015, the trial court terminated Father's parental rights to Child.

On September 9, 2015, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father raises the following issue on appeal:

Whether the [t]rial [c]ourt erred in determined [sic] that [Foster Mother and Foster Father] established by clear and convincing evidence the statutory grounds for involuntary termination of parental rights was met pursuant to 23 Pa.C.S.[] § 2511(A)(6)?[2]

Father's Brief, at 8.

Father argues that he did not relinquish parental claims or refuse to perform his parental duties, and that any failure perform parental duties was

---

[2] Father argues in his Statement of Errors on Complained on Appeal and the argument section in his brief that the trial court terminated his rights pursuant to 23 Pa.C.S. § 2511(a)(6). However, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1). Therefore, we will conduct our review pursuant to 23 Pa.C.S. § 2511(a)(1).

- 2 -

a result of his incarceration and resultant inability to contact Mother. Father's Brief, at 10. Thus, Father argues that the trial court abused its discretion in terminating his parental rights. *Id.*

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa.2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa.2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa.2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa.2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa.1994).

- 3 -

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa.2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa.Super.2009).

Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (*quoting* ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa.Super.2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super.2004) (*en banc*).

We will focus on section 2511(a)(1) and (b), which provide, as follows:

**§ 2511. Grounds for involuntary termination**

**(a)  General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> \*   \*   \*

**(b)  Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on

the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsections (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b) (emphasis in original).

In **In re Z.S.W.**, 946 A.2d 726 (Pa.Super.2008), this Court stated:

[t]o satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. **In re Adoption of R.J.S.**, 901 A.3d 502, 510 (Pa.Super.2006). In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

**In re Adoption of Charles E.D.M.**, 708 A.2d 88, 91 (Pa.1998).

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

**Id.** at 92 (citation omitted).

**In re Z.S.W.**, 946 A.2d at 730 (parallel citations omitted).

- 5 -

Our Supreme Court has instructed:

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and [] the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 828.

After re-visiting its decision in *In re: R.I.S.*, 36 A.3d 567, 572 (Pa.2011), regarding incarcerated parents, our Supreme Court stated:

> we now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 [Pa.C.S.] § 2511(a)(2). [*See In re: E.A.P.*, 944 A.2d 79, 85 (Pa.Super.2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-831 (some internal citations omitted).

- 6 -

With regard to a parent's incarceration, in *In re Adoption of S.P.*, our Supreme Court re-iterated the standard of analysis pursuant to section 2511(a)(1) for abandonment and added as follows:

> [a]pplying [*In re: Adoption of McCray*] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." [331 A.2d 652, 655 (Pa.1975)]. We observed that the father's incarceration made his performance of this duty "more difficult." *Id.*
>
> * * *
>
> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*In re Adoption of S.P.*, 47 A.3d at 828 (*quoting* *In re: Adoption of McCray*, 331 A.2d at 655) (footnotes and internal quotation marks omitted). Further, the Supreme Court stated, "incarceration neither compels nor precludes termination of parental rights." *In re Adoption of S.P.*, 47 A.3d at 828 (adopting this Court's statement in *In re Z.P.*, 994 A.2d 1108, 1120 (Pa.Super.2010)).

Father testified he was not aware that Mother was pregnant with Child until August or September of 2014. N.T., 8/9/15, at 168. Father said he received a note from Mother's cousin that said he was Child's father and

advising him to call Mother. *Id.* at 168. Father testified he called Mother to visit with Child, but they kept missing each other. *Id.* at 169. Father met Child for the first time in October of 2014, which was his only visit with Child. Father testified that he has been incarcerated in the Cumberland County Prison since October of 2014 for a simple assault conviction. *Id.* at 169. Father testified that, while incarcerated, he did not send Child any letters. *Id.* at 193.

Mother testified that she told Father she was pregnant with Child six months before he was born. *Id.* at 24. Ms. Reybok testified that she sent a letter to Father in December of 2014 disclosing the consent to adoption form for Child and the address of Foster Parents. *Id.* at 163. Furthermore, Ms. Reybok testified that Father did not respond to the letter, he did not try to contact her, and he did not contact Foster Parents. *Id.* at 164-65.

The trial court found

Father made very little effort to contact the child or remain an important person in his life. Although Father claims that he did not know how to contract [Mother], he testified he knew where [Mother] lived. Father has taken virtually no affirmative actions to maintain communication, contact, and association with [Child] for a period of six months immediately preceding the filing of the petition to terminate his parental rights and has not provided a sufficient reason for his failure to do so.

Trial Court Opinion, 10/1/15, at 1-2.

The trial court carefully reviewed the testimony and the evidence presented by the parties and held that Father had failed to perform his parental duties for well over six months prior to the filing of the termination

petition, and Father did not make an effort to maintain communication and association with Child. The trial court rejected Father's reasons for his abandonment of Child and his explanation for his lack of contact with Child as lacking credibility. We find that competent evidence of record supports the trial court's order holding that, for a period of at least six months prior to the filing of the petition, Father has engaged in conduct evidencing a settled purpose of relinquishing his parental rights to Child under section 2511(a)(1). *See In re Adoption of S.P.*, 47 A.3d at 826-27.

Next, this Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super.2008) (*en banc*). Pursuant to section 2511(b), we must consider whether the termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa.Super.2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The trial court must also discern the nature and status of the parent-child bond in the case, with utmost attention to the effect of permanently severing that bond on the child. *See id.*[3]

---

[3] Father did not challenge the best interest analysis pursuant to section 2511(b) in his statement of questions involved. *See In re J.K.*, 825 A.2d 1277, 1280 n.4 (Pa.Super.2003), *appeal denied*, 835 A.2d 710 (Pa.2003)

- 9 -

Foster Mother testified that it is in Child's best interest for Father's rights to be terminated. N.T., 8/9/15, at 139. She testified that Father never asked to visit Child, he did not send Child any gifts or letters, nor did he provide any financial support. *Id.* at 138. Foster Mother testified that she and Foster Father perform all of Child's parental duties. *Id.* at 131. Further, Foster Mother testified that Child is "very, very bonded" to her and Foster Father. *Id.* at 140. Additionally, Foster Mother testified that Child is thriving with her and Foster Father and removing Child from their home would be "severely traumatic for him." *Id.* at 140.

We have stated, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa.Super.2008). The certified record indicates that Father met Child only once, and has not seen Child, or even been in contact with him, since October of 2014. Additionally, Father admitted that he had not attempted to support Child. As we stated in *In re Z.P.*, *supra*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. We emphasized, "[p]arental rights are not preserved by waiting for a more convenient time to perform one's parental responsibilities while others provide the child with [the] child's physical and emotional

---

(citing *Commonwealth v. Lord*, 719 A.2d 306 (Pa.1998), for proposition that issues not included in the statement of questions involved are waived). Therefore, we find this issue waived. Even if this issue is not waived, Father's claim is without merit.

- 10 -

needs." *Id.* at 1119 (quoting *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super.2004) (emphasis in original)). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, *supra*; *see also In re: T.S.M.*, 71 A.3d 251, 267 (Pa.2013).

Again, we find that the competent, clear and convincing evidence in the record supports the trial court's conclusion that the termination of Father's parental rights would best serve Child's needs and welfare because it would provide Child with the permanency and stability that he needs in his life. The trial court's factual findings are supported by the record. The court's legal conclusions are not the result of an error of law or an abuse of discretion. Accordingly, we affirm the trial court's decision with regard to subsection (b). *In re Adoption of S.P.*, 47 A.3d at 826-27.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2016